## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MILTON HUNTER,

                    Petitioner,                Case Number: 03-71711

v.                                HONORABLE DENISE PAGE HOOD

DEBRA SCUTT,

                    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I.  Introduction

Petitioner Milton Hunter, a state inmate incarcerated at G. Robert Cotton Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 convictions for assault with intent to murder and possession of a firearm during the commission of a felony.  For the reasons set forth below, the Court shall deny the petition.

### II.  Facts

Petitioner's convictions arise out of the shooting of Montell Robinson.  Robinson testified that, on June 4, 1997, at approximately midnight, he was returning home from his girlfriend's home, where he had consumed two 40-ounce beers and smoked marijuana.  As he was driving down Littlefield Street in Detroit, where his ex-girlfriend Marquita Anderson lived, he saw Anderson driving toward him.  He testified that

Anderson pulled in front of his vehicle, cutting him off.  Robinson exited his vehicle and

he and Anderson began arguing.  Moments later, Petitioner drove up to the scene.

Robinson testified that Anderson then pulled a handgun out of her jacket pocket

and fired a shot into the air.  Anderson then said, "Kill [him] and take his truck."

Robinson began to run away and stated that he heard both Petitioner and Anderson fire

shots at him.  He testified that he was struck in the back, collapsed and awoke in the

hospital.  He was hospitalized for ten days.

Dr. Ann Marie Garritano testified that she treated Robinson at the Grace Hospital

Emergency Room.  She testified that he suffered a bullet wound to his back which

punctured one of his lungs.

Detroit police officer Shawn Giraud testified that he and his partner, Kraig Dalton,

responded to a radio call of a man down in the area of Littlefield Street.  He found

Robinson lying in the street and arranged for him to be transported to a hospital.  Officer

Giraud testified that he found two spent nine millimeter casings at the scene.  He testified

that he did not find any weapons.  Petitioner's vehicle was not at the scene when Officer

Giraud arrived.

### III.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of

assault with intent to murder and possession of a firearm during the commission of a

felony.  He was acquitted of a charge of carjacking.  On February 3, 1998, he was

sentenced as a fourth habitual offender to twenty-five to fifty years imprisonment for the

2

assault conviction, to be served consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.      The court's prejudicial remarks, conduct, and improper instructions were reversible error denying defendant a fair trial.

II.     The defendant was denied due process of law and a fair trial by the ineffective assistance of counsel.

III.    The trial court improperly influenced the juror selection process denying defendant a fair trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Hunter, No. 210389 (Mich. Ct. App. May 26, 2000).

Petitioner attempted to file a delayed application for leave to appeal in the Michigan Supreme Court, but the application was not accepted for filing because it was received by the court after expiration of the applicable limitations period. See Affidavit of Corbin R. Davis, Clerk of Court, Sept. 23, 2003.

Petitioner then filed a motion for relief from judgment in the trial court, presenting the following claims:

I.      The prosecutor committed misconduct in failing to disclose material evidence of an exculpatory nature to the defense prior to trial with respect to favorable evidence from a prosecution witness.

II.     Trial counsel was ineffective in failing to:

(1) Object to the suppression of favorable exculpatory evidence to the defense by the prosecution;

3

(2) Failed to object to prejudicial comments by the trial judge;

(3) Failed to object to the trial court's determination of the complaining witness's credibility;

(4) Failed to properly investigate and interview a prosecution witness with respect to exculpatory information favorable to the defense; and

(5) Failed to cross-examine a prosecution witness as to the substance of such exculpatory information.

III.    Appellant was deprived of his right to Due Process and a fair trial where:

(1) The trial court gave an improper jury instruction on the Assault with Intent to Murder charge, by failing to properly instruct on the "specific intent" requirement when explaining the elements of the charged offense to the jury;

(2) The trial judge allowed a juror, who had been observed conversing with the mother of the complaining witness during a break in the course of trial proceedings, to remain on the jury and ultimately render a finding of guilt against Appellant; and

(3) The trial judge conducted his own personal business and personal affairs during the course of the trial proceedings.

IV.    Appellant was deprived of his right to the effective assistance of appellate counsel where:

(1) His appellate attorney failed to advance the meritorious issues set forth in this post conviction motion and supporting brief;

(2) Failed to seek a remand to the trial court in the Court of Appeals for a[n] evidentiary hearing on his ineffective assistance of counsel claim raised in his appeal as of right; and

(3) Represented to the appellate court an intent to file a supplemental brief on appeal in relation to prejudicial comments made by the trial judge before the jury, but failed to do so, resulting in a finding by the Court of Appeals that the issue was deemed abandoned.

4

The trial court denied the motion for relief from judgment.  People v. Hunter, No. 97-004573-02 (Wayne County Circuit Court Oct. 12, 2001).

Petitioner filed delayed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court.  Both state appellate courts denied leave to appeal.  People v. Hunter, No. 238588 (Mich. Ct. App. May 8, 2002); People v. Hunter, No. 121853 (Mich. Jan. 31, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.      Petitioner was denied his appeal of right by the ineffective assistance of appellate counsel.

II.     Petitioner was denied the effective assistance of counsel during trial.

III.    Conviction was obtained by a violation of Petitioner's constitutional rights to due process and a fair trial; trial court gave improper instructions, juror contamination and trial judge conducted personal business during proceedings and made prejudicial remarks and comments.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

5

as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in
        the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d

429 (6th Cir. 1998).  Additionally, this Court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d

167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they

are clearly erroneous").

The United States Supreme Court has explained the proper application of the

"contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's]
clearly established precedent if the state court applies a rule that contradicts
the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly
established precedent if the state court confronts a set of facts that are
materially indistinguishable from a decision of this Court and nevertheless
arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas
corpus by a person in custody pursuant to the judgment of a State
court, a determination of a factual issue made by a State court shall
be presumed to be correct.

6

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 409-11.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

7

## V.  Analysis

## A.  Alleged Procedural Default

Respondent argues that Petitioner's habeas claims are procedurally defaulted because, in denying Petitioner's application for leave to appeal the trial court's order denying his motion for relief from judgment, the Michigan Supreme Court relied on M.C.R. 6.508(D).  Respondent further argues that Petitioner has failed to establish cause or prejudice to excuse the default.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the

8

conviction of one who is actually innocent." Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker,

9

501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See* <u>Coleman</u>, 501 U.S. at 729-30. The last state court to issue a reasoned opinion addressing the allegedly procedurally defaulted claims, the Michigan Supreme Court, denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." <u>Hunter</u>, No. 121853. M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

10

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)." Abela v. Martin, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground. Id.

Thus, the Court finds that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) is insufficient to establish procedural default, and shall proceed to consider the Petitioner's claims.

### B. Alleged Judicial Misconduct

Petitioner argues that he is entitled to habeas corpus relief because the trial court judge deprived him of a fair trial. Specifically, Petitioner claims that the trial court judge: (i) gave inadequate instructions regarding expert testimony and specific intent; (ii) declined a request by the jury for clarification of identification testimony; (iii) permitted a juror to remain on the jury after the juror held a discussion with the complainant's mother; (iv) injected his own opinion on the evidence into the jury instructions; and (v) discussed and handled personal affairs during the proceedings. Although Petitioner frames all of these claims under the broad heading of judicial misconduct, only the fourth and fifth claims are appropriately considered as allegations of judicial misconduct. The remaining claims are properly considered as allegations of error by the trial court judge,

11

rather than misconduct, and shall be considered as such.

As discussed *supra*, section V.A., Respondent's argument that this issue was procedurally defaulted based upon the Michigan Supreme Court's decision on collateral review was not supported by the record. The Court *sua sponte* raises the issue of procedural default on another ground with respect to this claim. *See* Elzy v. United States, 205 F.3d 882 (6th Cir. 2000) (holding that court may *sua sponte* raise issue of procedural default). The Michigan Court of Appeals, on direct review, held that Petitioner's claims of judicial misconduct were not preserved for review because no contemporaneous objection was made at trial. The state court's reliance on Petitioner's failure to object at trial was an adequate and independent state ground on which to decline to review Petitioner's claim. *See* Engle v. Isaac, 456 U.S. 107, 110 (1982). This Court, therefore, may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner claims that his trial attorney's ineffectiveness constitutes "cause." The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Coleman, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of

12

attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is

cause, however." Id. at 753-54 (internal citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established

a two-pronged test for determining whether a habeas petitioner has received ineffective

assistance of counsel.  First, a petitioner must prove that counsel's performance was

deficient.  This "requires a showing that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.

Second, a petitioner must show that counsel's deficient performance prejudiced

petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so

serious as to deprive the defendant of a fair trial."  Id.

The Supreme Court emphasized that, when considering an ineffective assistance of

counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is
> all too tempting for a defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to conclude that a
> particular act or omission of counsel was unreasonable. . . . A fair
> assessment of attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the
> circumstances of counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time.  Because of the difficulties inherent
> in making the evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action might be considered sound trial
> strategy.

Id. at 689 (internal citations omitted).

13

To determine whether his attorney was ineffective in failing to object to the trial court's conduct, the Court considers the merits of Petitioner's claims.

**1.**

In his first claim of judicial error, Petitioner argues that the trial court judge gave inadequate instructions regarding expert testimony and specific intent. Although holding that Petitioner's claims were not preserved for review, the Michigan Court of Appeals, nonetheless, addressed the merits of claims that the trial court gave improper jury instructions, stating, in pertinent part:

> [V]iewed in context, the court's instructions to the jury fairly resented the issues to be tried, sufficiently protected defendant's rights and did not prejudice the jury against defendant.

Hunter, slip op. at 2.

Petitioner has failed to show that the state court's finding that the jury instructions given were proper was contrary to or an unreasonable application of Supreme Court precedent. Consequently, Petitioner's attorney was not ineffective in failing to lodge a meritless objection to proper jury instructions, and Petitioner has failed to establish cause to excuse his procedural default of these claims. Thus, these claims are barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of

14

actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." Id. at 327.  The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.  It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Id. (internal quotation omitted).

Applying the Schlup standard of actual innocence to Petitioner's case, Petitioner has presented no new evidence, in light of which, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt.  Thus, these jury instruction claims are procedurally defaulted.

**2.**

Petitioner next claims that the trial judge improperly declined a request by the jury for information on identification testimony.  The jury sent a note to the trial court judge asking whether Petitioner was identified by line-up or by name.  Outside the presence of the jury, the trial judge advised the attorneys he would instruct the jury that he could not tell them how Petitioner was identified and that they would have to rely on their own recollection of the testimony to answer that question.  Neither the prosecutor nor Petitioner's attorney objected to that approach.  The trial judge then proceeded to instruct the jury, in pertinent part:

> Third, you [ask] how was Hunter ID'd, by photo line-up or by name.  Well, Ladies and Gentlemen, I told you yesterday that it is impossible for us to tell you, answer questions such as that. . . . It is for you to recall the testimony.
>
> But let me tell you this. . . . [W]hat is important is was the defendant Hunter identified as a person there. . . . [W]as he identified to your satisfaction by the evidence as the person who was there on the 4th day of June, 1997, when an alleged shooting and taking of a car and all of that occurred. . . .
>
> And when we talk about identity, we're talking about was he identified not as Mr. Hunter, but was he identified as the person who was there at the time committing the act which is alleged against him by the information that he committed. . . . If you have a doubt as to whether he was there, obviously he could not have committed the crime, and so it hasn't been proved.
>
> . . .
>
> . . . [T]he prosecution must prove beyond a reasonable doubt that the crime was committed and that the defendant was the one that committed it.  I[n] deciding how dependable an identification is, we're talking about identification of the man or the person who was there at the time, . . . think about such things as how good a chance the witness had to see the offender

at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well lighted, and the witness's state of mind at the time.

Also, think about the circumstances at the time of the identification such as how much time had passed since the crime, since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification. . . .

. . . You may also consider any time the witness failed to identify the defendant or made an identification or gave a description that did not agree with his identification of the defendant during trial.

Ladies and gentlemen, you should examine the witness's identification testimony carefully.  You may consider whether other evidence supports the identification because then it may be more reliable.  However, you may use identification testimony alone to convict the defendant alone as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

Tr., Tr., 1/14/98, pp. 15-19.

The Michigan Court of Appeals held that the jury instructions were adequate.

Hunter, slip op. at 2.  Petitioner has failed to show that this comprehensive response to the

jury's question regarding identification was improper or inadequate.  Therefore, he has

failed to show that his attorney was ineffective in failing to lodge a meritless objection.

In addition, Petitioner has presented no new evidence, in light of which, no juror,

acting reasonably, would have found him guilty beyond a reasonable doubt.  Accordingly,

this claim is procedurally defaulted.

17

**3.**

Petitioner next claims that the trial court erred in permitting a juror, Juror Glaze, to remain on the jury after the juror held a discussion with the victim's mother.  It is well-settled that "the trial court is in the best position to determine the nature and extent of alleged jury misconduct, and we review its determinations of the scope of proceedings necessary to discover misconduct for abuse of discretion."  United States v. Tines, 70 F.3d 391, 898 (6ᵗʰ Cir. 1995), *citing* United States v. Shackelford, 777 F.2d 1141, 1145 (6ᵗʰ Cir. 1985), *cert. denied* 476 U.S. 1119 (1986).

In this case, the trial court extensively questioned Juror Glaze regarding his conversation with the victim's mother.  Juror Glaze stated that he spoke with a woman outside the courtroom regarding the weather, his electric bill and his feet, which were sore.  He had no knowledge that the person to whom he was speaking was the victim's mother.  The trial court concluded that this limited interaction in no way impacted Petitioner's right to a fair and impartial jury.  Petitioner presents no evidence or arguments, other than conclusory allegations, to show that the foregoing decision was incorrect or unreasonable.  The Court finds that Petitioner's trial attorney was not ineffective in failing to object to Juror Glaze being permitted to remain on the jury.

Petitioner also has presented no new evidence, in light of which, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt.  Accordingly, this claim is procedurally defaulted.

**4.**

18

Finally, Petitioner claims that the trial judge improperly injected his own opinion on the evidence into the jury instructions and discussed and handled personal affairs during the proceedings.

An impartial judge is a necessary component of a fair trial. In re Murchison, 349 U.S. 133, 136 (1955). This Court is guided by the standard established by the Supreme Court in Liteky v. United States, 510 U.S. 540 (1994), in addressing claims of judicial bias. In Liteky, the Supreme Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Id. at 554.

The Supreme Court cautioned that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not establish bias or partiality. Id. at 556. Further, "[a] judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." Id.

The trial court's comments during jury instructions, cited by Petitioner in support

19

of his claim, are taken out of context. The Court has reviewed the jury instructions and finds that no evidence that the trial judge improperly injected his opinion into the jury instructions. The Court, therefore, concludes that trial counsel was not ineffective in failing to object to these comments. Further, the Court finds no evidence that the trial judge conducted personal business during trial so as to call into question his impartiality or threaten Petitioner's right to a fair trial.

Petitioner also has presented no new evidence, in light of which, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. Accordingly, this claim is procedurally defaulted.

### C.  Alleged Ineffective Assistance of Counsel

Petitioner argues that he is entitled to habeas corpus relief because his trial attorney rendered ineffective assistance. Specifically, Petitioner claims that his trial attorney was ineffective in failing to: (i) object to the suppression of favorable exculpatory evidence; (ii) object to prejudicial comments and conduct by the trial judge; (iii) object to the trial court's determination of the complaining witness's credibility; (iv) properly investigate and interview a prosecution witness; and (v) cross-examine a prosecution witness as to the substance of such exculpatory evidence.

As discussed *supra*, the Court applies the two-pronged test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), to determine whether a habeas petitioner has received ineffective assistance of counsel.

### 1.

20

In his first ineffective assistance of counsel claim, Petitioner argues that his attorney was ineffective in failing to object to the suppression of favorable exculpatory evidence by Dr. Garritano, a physician who treated the victim when he was brought to the emergency room. Dr. Garritano testified that a nurse made a notation in Petitioner's medical records that the "patient was shot by his girlfriend's mother." Tr., 1/12/98, at p. 44. Thus, this evidence was not suppressed at trial; nor is there any evidence that the prosecution failed to disclose this report to Petitioner prior to trial. Petitioner's attorney extensively cross-examined Dr. Garritano regarding this notation. Thus, Petitioner has failed to show any way in which his attorney was ineffective in dealing with this notation.

To the extent that Petitioner is alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963), the Court also finds this claim to be meritless. In Brady, the Supreme Court established that a prosecutor's failure to disclose evidence constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. However, if previously undisclosed evidence is disclosed during trial, no Brady violation occurs unless the defendant is prejudiced by the late disclosure. U.S. v. Word, 806 F.2d 658, 665 (6th Cir. 1986). Assuming that the prosecutor did not disclose the full medical report until trial, Petitioner has not shown that he was prejudiced by the tardy disclosure. Therefore, he has failed to establish a Brady violation.

**2.**

In his second ineffective assistance of counsel claim, Petitioner argues that his

21

attorney was ineffective in failing to object to judicial misconduct.  Specifically,

Petitioner maintains that his attorney should have objected when the trial judge: (i)

incorrectly instructed the jury that only experts can give opinions; (ii) declined a request

by the jury to review transcripts of identification testimony; (iii) permitted a juror to

remain on the jury after the juror held a discussion with the complainant's mother; (iv)

injected his own opinion on the evidence into the jury instructions; and (v) discussed and

handled personal affairs during the proceedings.

The Court addressed Petitioner's claims of judicial misconduct *supra*.  Because

Petitioner's claims of judicial misconduct lacked merit, Petitioner cannot establish that his

attorney was ineffective in failing to object to proper judicial conduct.

**3.**

In his third ineffective assistance of counsel claim, Petitioner argues that his

attorney was ineffective in failing to object to the trial court's determination of the

complaining witness's credibility.  Although denying this claim, the Michigan Court of

Appeals fails to provide any explanation for its decision.  Where a state court does not

offer some explanation of its decision, a federal court must conduct an independent

review of the state court's decision.  This independent review requires the federal court to

"review the record and applicable law to determine whether the state court decision is

contrary to federal law, unreasonably applies clearly established federal law, or is based

on an unreasonable determination of the facts in light of the evidence presented." Harris

v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000).  "Yet, any independent review that is

22

conducted must remain deferential to the state court's decision and cannot amount to a 'full *de novo* review of the claims.'" Joshua v. DeWitt, 341 F.3d 430, 447-48 (6th Cir. 2003), *quoting* Harris, 212 F.3d at 943.  Because the state court failed to offer any explanation for its ruling denying Petitioner's claim, this Court will proceed with an independent review of this claim "'through the lens of § 2254(d).'"  Id. at 448, *quoting* Price v. Vincent, 538 U.S. 634, 639 (2003).

Petitioner cites no specific portion of the record to support his claim that the trial court made a determination as to the complaining witness's credibility.  The Court has reviewed the trial court transcript and finds no such inappropriate comments by the trial court judge.  Thus, the Court concludes that the Michigan Court of Appeals decision that counsel was not ineffective in failing to object to the trial court's conduct in this regard was not contrary to nor an unreasonable application of Supreme Court precedent.

**4.**

Next, Petitioner claims that his trial attorney was ineffective in failing to properly investigate and interview a prosecution witness with respect to exculpatory information favorable to the defense, and failed to cross-examine a prosecution witness regarding such exculpatory evidence.  Petitioner fails to identify in his petition the specific witness to whom he is referring.  After reviewing the state court record, the Court presumes that Petitioner is referring to prosecution witness Montell Robinson, the shooting victim, whose trial testimony was inconsistent with his preliminary examination testimony.

The last state court to issue a reasoned opinion regarding this claim, the Michigan

23

Court of Appeals, stated, in pertinent part:

> Regarding counsel's cross-examination of the complainant, the record
> indicates that, contrary to what defendant argues, counsel did in fact
> impeach the complainant with prior inconsistent testimony from his
> preliminary examination concerning his recognition of defendant.

Hunter, slip op. at 2.

The Court has reviewed the trial court transcript and concurs with the state court's finding that trial counsel effectively cross-examined Robinson regarding his prior, inconsistent testimony. Petitioner has, therefore, failed to show that the state court's conclusion that his attorney was not ineffective in this regard was contrary to or an unreasonable application of Supreme Court precedent.

### D.  Alleged Ineffective Assistance of Appellate Counsel

Finally, Petitioner claims that he is entitled to the issuance of writ of habeas corpus because his appellate attorney rendered ineffective assistance by failing: (i) to investigate and present the claims Petitioner presented in his motion for relief from judgment; (ii) to seek a remand for an evidentiary hearing on his ineffective assistance of counsel claim, and (iii) to file a supplemental brief regarding allegedly prejudicial comments made by the trial court judge.

In the context of an ineffective assistance of appellate counsel claim, the Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner has failed to show that any of the claims he argues appellate counsel should have raised on direct appeal had any merit.  Therefore, he cannot show that he was prejudiced by his attorney's failure to present them.  Petitioner also has failed to show that he was prejudiced by his attorney's failure to request an evidentiary hearing regarding the ineffective assistance of counsel claims.  Further, Petitioner was not prejudiced by his attorney's failure to file a supplemental brief regarding alleged instances of judicial misconduct.  As discussed supra, none of the conduct which Petitioner found objectionable rose to the level of judicial misconduct.

Accordingly, the Court denies habeas corpus relief with respect to this claim.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

  s/ DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATE: <u>July 28, 2005</u>